IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **DAVID AZOUZ, M.D.**, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. **3:10-CV-1161-L** |
| | § | |
| **PRINCIPAL LIFE INSURANCE COMPANY**, | § | |
| | § | |
| Defendant, | § | |

## MEMORANDUM OPINION AND ORDER

Before the court is Defendant's Motion for Summary Judgment, filed April 15, 2011. David Azouz, M.D. ("Plaintiff" or "Azouz") filed no response to the motion. After carefully reviewing the motion, brief, competent summary judgment evidence, record, and applicable law, the court **grants** Defendant's Motion for Summary Judgment.

**I.**     **Background**

Azouz originally brought this action against Principal Life Insurance Company ("Defendant") on April 22, 2010, in the 160th Judicial District of Dallas County, Texas. Specifically, Plaintiff brought two claims against Defendant for violations of the Texas Insurance Code and negligent misrepresentation. Defendant was served on May 11, 2010, and removed the case to this court on June 10, 2010, on the grounds that Plaintiff's claims presented a federal question under the Employee Retirement Income Security Act; and that complete diversity of citizenship existed between the parties and the amount in controversy exceed $75,000, exclusive of interest and costs.

**Memorandum Opinion and Order- Page 1**

This lawsuit arises out of a surgical operation (the "Operation") that Azouz performed in February 2008 on Patient X.[*] The Operation involved excisions of twenty-four lesions over Patient X's body. Plaintiff alleges that Defendant verified coverage for, and authorized, the Operation. After Azouz finished his work and submitted his bill to Defendant for completing the Operation, Defendant allegedly refused to provide payment because coverage was not available and/or the surgery performed was not authorized. In search of a remedy, Azouz brought suit against Defendant and alleged that Defendant made false representations, in violation of sections 541.051 and 541.061 of the Texas Insurance Code, which ultimately misled Azouz into believing that his surgical expenses would be paid. Additionally, Azouz brought a claim against Defendant for negligent misrepresentation and a request for attorney's fees.

Defendant now moves for summary judgment on Azouz's claims on the following grounds: (1) no misrepresentations to Azouz were made; (2) nothing Defendant said or failed to say caused Azouz any damages; and (3) no evidence demonstrates that Azouz has suffered any pecuniary loss because Patient X must pay for the Operation if Defendant does not.

## II. Summary Judgment Standard When No Response Is Filed

Summary judgment shall be granted when the record shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party.

---

[*]Patient X is a woman whose identity has been withheld by the parties for the purposes of this lawsuit, and the court will respect Patient X's privacy.

**Memorandum Opinion and Order- Page 2**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Ragas*, 136 F.3d at 458. Further, a court "may not make credibility determinations or weigh the evidence" in ruling on motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994). The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Ragas*, 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir.), *cert. denied*, 506 U.S. 832 (1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues which are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id*. If the nonmoving party fails to make a showing sufficient to

establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

Azouz filed no response to Defendant's Motion for Summary Judgment. This failure, of course, does not permit a court to enter a "default" summary judgment. *Eversley v. MBank Dallas*, 843 F.2d 172, 174 (5th Cir. 1988). When no response is filed, such failure does permit the court to accept as undisputed the evidence set forth in support of a movant's motion for summary judgment. *Id.* Normally, "[a] summary judgment nonmovant who does not respond to the motion is relegated to [his] unsworn pleadings, which do not constitute summary judgment evidence." *Bookman v. Schubzda*, 945 F. Supp. 999, 1002 (N.D. Tex. 1996) (citing *Solo Serve Corp. v. Westowne Assocs.*, 929 F.2d 160, 165 (5th Cir. 1991)). Azouz's pleadings are not verified, and, therefore, he has presented no summary judgment evidence to dispute Defendant's version of the facts. Accordingly, the court accepts Defendant's facts and evidence as undisputed.

### III.     Undisputed Facts

Patient X was referred to Azouz by her dermatologist, and Azouz received the written referral on October 26, 2007. Def.'s App. 91, 94 [19:18-20:5; 39:1-17]. Azouz's representative, Susan Cox ("Cox"), called Defendant on the same day and was told that Patient X's deductible was $2,000 and her co-insurance was 40% up to $6,000. *Id.* at 99-100 [54:21-55:22; 56:3-24]. Defendant's customer service representative further provided Cox with the following disclaimer:

> The following benefit quote will not qualify as a verification under Title 28 of Texas Administrative Code § 19.1724 unless you are specifically told by the customer service representative during the course of the call that you have been issued a verification under Texas law. Unless you ask for clarification, we will assume that you understand and agree with this disclaimer.

*Id.* at 6-7 ¶ 18.

Over the course of Cox's phone call, Defendant's customer service representatives did not tell her whether a claim would be paid, did not preauthorize any treatment, did not determine the medical necessity of a procedure, and did not commit to pay a certain amount of benefits. *Id.* Defendant's customer service representatives simply explained to Cox the in-network and out-of-network deductibles and co-insurance percentages and out-of-pocket maximums, in addition to the out-of-pocket amount that Patient X had satisfied up to that point. *Id.* Azouz made Patient X pay her $2,000 deductible following the phone call. *Id.* at 101 [59:6-13; 61:10-12].

Nobody from Azouz's office contacted Defendant again between October 26, 2007, and February 1, 2008, which was the date of the Operation. *Id.* at 102-103 [63:5-12; 54:6-11; 86:3-14]. On March 27, 2008, Azouz's office transmitted to Defendant a health insurance claim, which related to expenses incurred for performing the Operation. *Id.* at 2 ¶ 5, Ex. 2. The claim was made pursuant to Defendant's group policy number H38789 (the "Policy") issued to Omnysis, Inc., under which Patient X was covered as a benefit of her employment. *Id.* at 1-2 ¶¶ 3-4, Ex. 1. The Policy defines "Covered Charges" as:

> A Treatment or Service is considered to be a Covered Charge if the Treatment or Service is:
>
> a. prescribed by a Physician and required for the screening, diagnosis or treatment of a medical condition;
>
> b. consistent with the diagnosis or symptoms;
>
> c. not excessive in scope, duration, intensity or quantity;
>
> d. the most appropriate level of services or supplies that can safely be provided; and

    e.  determined by [Defendant] to be *Generally Accepted*.

*Id.* at 3 ¶ 3 (emphasis added). The Policy further defines "Generally Accepted" as:

> Treatment or Service for the particular sickness or injury which is the subject of the claim that:
>
> a.  has been accepted as the standard of practice according to the prevailing opinion among experts as shown by (or in) articles published in authoritative, peer-reviewed medical and scientific literatures; and
>
> b.  is in general use in the relevant medical community; and
>
> c.  is not under scientific testing or research.

*Id.* at 3-4 ¶ 3.

  To assist Defendant in determining whether the Operation performed by Azouz was "Generally Accepted" and a "Covered Charge," Defendant referred the claim file to MES Solutions for a peer review. *Id.* at 3-4 ¶ 8, Ex. 5. In addition, one of Defendant's medical directors, Jody Helmick, M.D. ("Dr. Helmick"), reviewed the file and the peer report, concluding that the information did not substantiate benefits for any of the charges in question. *Id.* at 4 ¶ 8, Ex. 6. On May 28, 2008, Defendant called Azouz's office and advised Cox about the results of the medical reviews. *Id.* at 4 ¶ 9, Ex. 7. Following a telephone conversation between Dr. Helmick and Azouz on June 6, 2008, Defendant again referred the file to MES Solutions for a second peer review. *Id.* at 5 ¶¶ 11-12, Exs. 9-10. This time, the file and peer report were reviewed by another one of Defendant's medical directors, Mathew C. Petersen, M.D., and he concurred that only one of the twenty-four excisions was justified and that the remaining procedures were not generally accepted because they are not within the standard of practice and excessive in scope. *Id.* at 5 ¶ 13, Ex. 11.

Defendant explained its decision to deny coverage via letter dated July 24, 2008, mailed to Azouz. *Id.* at 5-6 ¶ 14, Ex. 12. Specifically, Defendant determined that only one of the procedures within the Operation was a "Covered Charge" and that charges for the other procedures were not payable. *Id.* at 6 ¶ 16, Ex. 16. Patient X's remaining deductible and co-insurance exceeded the charges for the single accepted procedure, and therefore no benefits were payable from Defendant to Azouz. *Id.*

## IV. Analysis

Both of Plaintiff's claims are premised upon the notion that Defendant made misrepresentations that induced Azouz, to his detriment, to perform the Operation. The court determines, however, that the uncontroverted facts established by Defendant's summary judgment evidence demonstrate that no misrepresentations were made. From what the court can ascertain, Cox simply misunderstood the full context of her initial phone call with Defendant when Azouz received the written referral for Patient X. It is undisputed that Defendant's customer service representatives provided Cox with a disclaimer stating that their conversation did not qualify as a "verification" under the Texas Administrative Code, and Defendant's medical reviews establish that twenty-three of the twenty-four excisions Azouz performed as part of the Operation did not qualify for coverage because they were not "Generally Accepted" within the meaning of the Policy.

Further, the Texas Insurance Code provides a civil remedy for persons who have "sustain[ed] *actual damages* . . . caused by the other person engaging in an act or practice . . . to be an unfair method of competition or an unfair or deceptive act or practice in this business of insurance . . . ." Tex. Ins. Code Ann. § 541.151 (West 2009) (emphasis added). Additionally, to bring a negligent misrepresentation claim in Texas, the plaintiff must have suffered "*pecuniary loss* by justifiably

relying on the [mis]representation." *Federal Land Bank Ass'n of Tyler v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991) (emphasis added).

First, the court holds as a matter of law that Defendant did not make any false representations to Azouz upon which Plaintiff's claims could be reasonably based. Second, even if a misrepresentation did occur, there is no evidence in the record of actual pecuniary damages sustained by Azouz. By Azouz's own admission, Patient X is liable to him for the full expense of the Operation, even if he does not obtain payment from Defendant. Def.'s App. at 103 [69:10-21]. There is absolutely no indication that Azouz will be precluded from recovering his surgical expenses merely because Defendant determined that it owed no benefits under the Policy. Accordingly, Azouz fails to present evidence to satisfy at least one of the requirements for each of his claims, and there is no genuine dispute as to any material fact. Defendant is therefore entitled to judgment as a matter of law.

## VI. Conclusion

For the reasons herein stated, there is no genuine dispute as to any material fact for the trier of fact to consider with respect to either of Plaintiff's claims. Defendant is entitled to judgment as a matter of law. The court accordingly **grants** Defendant's Motion for Summary Judgment and **dismisses with prejudice** Plaintiff's claims. As required by Rule 58 of the Federal Rules of Civil Procedure, the court will issue a judgment in favor of Defendant by separate document.

**It is so ordered** this 7th day of July, 2011.

Sam A. Lindsay
United States District Judge